```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| JOHN TSOURIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 09-387 |
| | ) |
| THE SHAW GROUP INC. and SHAW | ) |
| ENVIRONMENTAL, INC., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

### **INTRODUCTION**

In this civil action, Plaintiff, John Tsouris, seeks damages from Defendants, The Shaw Group, Inc. (individually, "The Shaw Group") and Shaw Environmental, Inc. (individually, "SEI"), for an alleged violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Presently before the Court is Defendants' motion to transfer venue to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion will be granted.

### **FACTUAL ALLEGATIONS**

In his amended complaint, Plaintiff alleges the following facts:

The Shaw Group provides engineering, consulting, procurement, pipe fabrication, construction and maintenance

services to the power and process industries. The Shaw Group conducts business throughout the world, including a facility located in Monroeville, Pennsylvania. SEI is a wholly-owned subsidiary or division of The Shaw Group which is registered to conduct business in the Commonwealth of Pennsylvania. The corporate headquarters of SEI is located in Monroeville, Pennsylvania.

On April 7, 2003, Plaintiff, who currently resides in Randleman, North Carolina, began working for Environmental Systems Corporation ("ESC") as a field service technician. In December 2005, ESC was purchased by SEI. On January 16, 2006, Plaintiff was laid off by ESC and offered a job by Defendants. Defendants classified Plaintiff as an hourly-exempt employee, even though he was a non-exempt employee. While employed by Defendants, Plaintiff was paid a fixed hourly rate and frequently worked in excess of 40 hours per week. Plaintiff was never paid by Defendants at a rate one and one-half times his regular hourly rate for the overtime hours.[1]

Plaintiff questioned his classification as "hourly-exempt" and repeatedly expressed his belief that he was a non-exempt employee entitled to overtime pay under the FLSA to Defendants'

---

[1] Under the FLSA, an employer must pay an hourly employee one-and one-half times his or her regular hourly rate for work performed in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

management and to Defendants' Human Resources Department which is located in Monroeville, Pennsylvania. Despite being put on notice of their overtime obligations, Defendants did nothing to correct or remedy the FLSA violation.

In 2007, Charles Jones became the Manager of Plaintiff's Department. On several occasions, including a conversation on August 10, 2007, Plaintiff raised the overtime issue with Mr. Jones. Subsequently, Plaintiff was pressured with respect to his work schedule, and, in September 2007, he was reprimanded for refusing a work assignment.

On October 8, 2007, Plaintiff brought the overtime issue to the attention of Defendants' Human Resources Department by sending a letter to Fran Sarvas requesting an investigation of the alleged FLSA violation. From September 2007 to December 2007, Defendants scrutinized Plaintiff's work, refused to approve time sheets and expense reports submitted by Plaintiff, and indicated that Plaintiff would not be reimbursed for certain work-related travel expenses. On December 25, 2007, Defendants terminated Plaintiff's employment in retaliation for his complaints about their violation of the FLSA.

**EVIDENCE SUBMITTED IN SUPPORT OF MOTION TO TRANSFER VENUE**[2]

Defendants submitted three affidavits in support of their motion to transfer venue to the Eastern District of Tennessee. The first affidavit was executed by Fran Sarvas, Senior Manager of Human Resources for The Shaw Group. In her affidavit, Ms. Sarvas avers that Plaintiff has never been employed by The Shaw Group;[3] that Plaintiff has never been employed by SEI at its Monroeville, Pennsylvania location; and that, at all relevant times, Plaintiff was employed by SEI as a field technician in Knoxville, Tennessee. (Document No. 14-2).

The second affidavit was executed by Charles Jones, Business Line Manager III for SEI in Knoxville, Tennessee. Mr. Jones avers that he discussed the overtime issue with Plaintiff in Knoxville, Tennessee in August 2007; that he was responsible for Plaintiff's expense reimbursements which were handled in Knoxville, Tennessee; that he was involved in the decision to terminate Plaintiff's employment with SEI which occurred in Knoxville, Tennessee; and that he was located in Knoxville,

---

[2] In ruling on a motion to transfer venue, the Court may only consider those facts which are undisputed or which are a matter of record in the form of affidavits, depositions, stipulations or other documents. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757-58 (3d Cir.1973).

[3] Although a dispute exists as to whether Plaintiff was employed by The Shaw Group, for purposes of the motion to transfer venue, the Court will assume that he was employed by both Defendants as alleged in his amended complaint.

4

Tennessee at all times during which he supervised Plaintiff's employment with SEI. (Document No. 14-4).

The third affidavit was executed by John Rymer, Service Contract Supervisor for SEI in Knoxville, Tennessee. Mr. Rymer avers that he reprimanded Plaintiff for refusing work assignments in Knoxville, Tennessee in September 2007; that he was responsible for Plaintiff's expense reimbursements which were handled in Knoxville, Tennessee; that he was involved in the decision to terminate Plaintiff's employment which occurred in Knoxville, Tennessee; and that he was located in Knoxville, Tennessee at all times during which he supervised Plaintiff's employment with SEI. (Document No. 14-5).

In support of their motion to transfer venue, Defendants also submitted a copy of the complaint filed by Plaintiff against ESC, The Shaw Group and SEI in the United States District Court for the Eastern District of Tennessee which was docketed at Civil Action No. 08-350. (Document No. 14-3). The class action complaint, which is based on the very conduct that is the subject of this civil action, alleges that Defendants violated the FLSA by failing to pay overtime compensation to non-exempt employees, including Plaintiff and similarly situated employees, "who worked for Defendants at their Knoxville, Tennessee office." (Document No. 14-3, ¶ 21).

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." A defendant moving for the transfer of a case bears the burden of establishing that the plaintiff's choice of forum is inappropriate. Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 394 (S.D.N.Y. 2006).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). In ruling on a motion to transfer venue, the Court is not limited to the three factors set forth in 28 U.S.C. § 1404(a), but should consider the private and public interests implicated by the motion.

The private interests that Courts have considered in ruling on Section 1404(a) motions include (a) the plaintiff's forum preference as manifested in the original choice, (b) the defendant's preference, (c) where the claim arose, (d) the convenience of the parties as indicated by their relative physical and financial condition, (e) the convenience of the

witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora and (f) the location of books and records - similarly limited to the extent that the files could not be produced in the alternative forum. The public interests have included (a) the enforceability of a judgment, (b) practical considerations that could make the trial easy, expeditious or inexpensive, (c) the relative administrative difficulty in the two fora resulting from court congestion, (d) the local interest in deciding local controversies at home, (e) the public policies of the fora and (f) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir.1995).

## LEGAL ANALYSIS

### Plaintiff's Choice of Forum

Ordinarily, there is a strong presumption in favor of a plaintiff's choice of forum. This presumption, however, is diminished when the plaintiff does not reside in the forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 265-66 (1981). In the present case, it is undisputed that Plaintiff is a resident of North Carolina; that throughout the period of his employment with Defendants, Plaintiff was employed in Knoxville, Tennessee; and that Plaintiff has never worked at Defendants' offices that are located in the Western District of Pennsylvania. Under the circumstances, the Court declines to give more than minimal

weight to Plaintiff's choice of the Western District of Pennsylvania to file this case.

**Location of Events Giving Rise to Plaintiff's FLSA Claim**

The only connection between this forum and Plaintiff's claim that Defendants retaliated against him for voicing complaints about his failure to be paid overtime compensation is the fact that Plaintiff sent a letter concerning the overtime issue to Fran Sarvas who is employed in The Shaw Group's Human Resources Department in Monroeville, Pennsylvania. All of Plaintiff's other complaints concerning the overtime issue were made to his supervisors in Knoxville, Tennessee; Plaintiff allegedly was pressured with regard to his work schedule in Knoxville, Tennessee; Plaintiff was reprimanded by his supervisor for refusing a work assignment in Knoxville, Tennessee; the decision to deny Plaintiff's request for certain work-related expenses was made by his supervisors in Knoxville, Tennessee; and the decision of Plaintiff's supervisors to terminate his employment with Defendants was made in Knoxville, Tennessee.[4] Clearly, the

---

[4] In this connection, the Court notes that in opposition to the motion to transfer venue, Plaintiff states that he "believes" Defendants' Human Resources Department in Monroeville, Pennsylvania would have had input into the decision to terminate his employment. (Document No. 18, p. 4). However, he has failed to support this "belief" with an affidavit or other document. In any event, input into the decision to terminate Plaintiff's employment in Knoxville, Tennessee by Defendants' Human Resources Department in Monroeville, Pennsylvania would not alter the Court's conclusion that venue in the Western District of Pennsylvania is improper.

Eastern District of Tennessee has a much greater nexus to Plaintiff's FLSA claim than the Western District of Pennsylvania.

**Convenience of the Parties**

The convenience of the parties also favors a transfer of this case to the Eastern District of Tennessee. The supervisors who were responsible for the specific acts of unlawful retaliation alleged by Plaintiff are employed by Defendants in Knoxville, Tennessee. Moreover, unlike the usual situation presented by a motion to transfer, venue in the Eastern District of Tennessee appears to be more convenient for Plaintiff. Specifically, Plaintiff resides closer to the Eastern District of Tennessee (approximately 232 miles) than the Western District of Pennsylvania (approximately 317 miles).

**Unavailability of Witnesses**

The unavailability of witnesses also does not weigh in favor of Plaintiff's choice of forum. There is no indication that any employee from Defendants' Human Resources Department in Monroeville, Pennsylvania who Plaintiff may wish to call as a witness will be unavailable for a trial in the Eastern District of Tennessee.[5] Moreover, "[m]odern technology makes actual unavailability for trial less likely since video recordings of appearances can be made for trial and witnesses can appear

---

[5]Similarly, there is no indication that any relevant records cannot be produced in the Eastern District of Tennessee.

remotely via video-conferencing technology." Carnegie Mellon University v. Marvell Tech. Group, 2009 WL 3055300, No. 09-290, at *4 n.3 (W.D.Pa.Sept. 21, 2009).

**Local Interest**

The interest of the Eastern District of Tennessee in this dispute far outweighs the interest of the Western District of Pennsylvania. Plaintiff is not a resident of this district; he was never employed by Defendants in this district; and an overwhelming number of the events giving rise to Plaintiff's FLSA claim against Defendants occurred in the Eastern District of Tennessee.

**Practical Considerations**

Finally, as noted previously, Plaintiff filed a class action against Defendants in the Eastern District of Tennessee in 2008 based on their alleged violation of the FLSA for failing to pay overtime compensation to hourly employees. The pendency of this related case weighs heavily in favor of a transfer of venue. LG Electronics, Inc. v. First Intern. Computer, Inc., 138 F.Supp.2d 574, 592 (D.N.J.2001)(The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending).

**CONCLUSION**

In sum, although the Court has jurisdiction over Defendants, the Eastern District of Tennessee clearly is a more appropriate

venue for this civil action. As a result, Defendants' motion to transfer venue will be granted.

_William L. Standish_
William L. Standish
United States District Judge

Date: October 6, 2009